**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RETRO ENVIRONMENTAL, LLC, | * | |
| 1332 Londontown Boulevard, Suite 207 | | |
| Eldersburg, Maryland 21784 | * | |
| | | |
| Plaintiff, | * | |
| | | |
| v. | * | |
| | | |
| COLIN MUIR | * | |
| 12317 Renner Road | | |
| Keymar, Maryland 21757 | * | |
| | | |
| and | * | Case No. 1:25-cv-858 |
| | | |
| SHAUN BOGGS | * | |
| 2266 Leetown Road | | |
| Summit Point, West Virginia 25446 | * | |
| | | |
| and | * | |
| | | |
| CALVIN LIPTRAP | * | |
| 1215 Vermont Road | | |
| Bel Air, Maryland 21014 | * | |
| | | |
| and | * | |
| | | |
| RETROAIM, LLC | * | |
| 501 Independence Parkway, Suite 310 | | |
| Chesapeake, Virginia 23320 | * | |
| | | |
| Serve on: | * | |
| | | |
| Michael King, Resident Agent | * | |
| 800 Snow Hill Road | | |
| Salisbury, Maryland 21804 | * | |
| | | |
| And | * | |
| | | |
| AIM SERVICES, INC. | * | |
| 4801 W. Military Highway | | |
| Chesapeake, Virginia 23323 | * | |
| | | |
| Serve on: | * | |

```
                                          *
Michael King, Resident Agent
1518 Woodridge Road                       *
Salisbury, Maryland 21804
                                          *
       Defendants.
                                          *
*     *     *     *     *     *     *     *     *     *     *     *     *
```

## VERIFIED COMPLAINT
## FOR TEMPORARY RESTRAINING ORDER AND OTHER RELIEF

Retro Environmental, LLC ("Retro"), Plaintiff, by and through its undersigned counsel, files this Complaint against RetroAIM, LLC, AIM Services, Inc., Calvin Liptrap, Shuan Boggs, and Colin Muir (jointly referred to herein as "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1.      This is an action by Retro for a temporary restraining order, injunctive relief, and compensatory, consequential, and punitive damages, and legal fees associated with Defendants' misappropriation of Retro's proprietary and confidential business information and trade secrets in order to unfairly compete against Retro in the demolition and abatement industry.

2.      Defendants' unlawful competitive efforts constitute violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839, *et seq*.; the Maryland Uniform Trade Secrets Act, Commercial Law Article § 11-1201, *et seq*; Federal trademark infringement pursuant to 15 U.S.C. § 1125(a) and § 1114; Maryland Criminal Code, § 7-302, and Maryland common law.

3.      Retro will suffer irreparable harm if Defendants are not enjoined from the use and misappropriation of Retro's confidential and proprietary business information and trade secrets.

## PARTIES

4.      Retro is a Maryland limited liability company with its principal place of business in Eldersburg, Maryland. Retro provides demolition and abatement services to its clients throughout Maryland, Pennsylvania, Washington DC, West Virginia, Virginia, and the Carolinas.

2

5.      RetroAIM, LLC is a Virginia limited liability company providing demolition and abatement services to clients in Virgina, Delaware, North Carolina, Maryland and Washington D.C., with a newly acquired office in Maryland. RetroAIM conducts its principal management operations in Chesapeake, Virginia.

6.      AIM Services, Inc. is a Virginia corporation with a principal place of business in Virginia.

7.      RetroAIM, LLC has registered "AIM Services" as a trade name in Maryland and, upon information and belief, has operated in concert with AIM Services, Inc. in the events of this case. This Complaint will refer to RetroAIM, LLC and AIM Services, Inc. collectively as "RetroAIM."

8.      Muir was formerly employed by Retro as Senior Project Manager and is now employed by RetroAIM as Operations Manager for its newly established Baltimore/Washington D.C. branch. Muir resides at 12317 Renner Road, Keymar, Maryland 21757.

9.      Boggs was formerly employed by Retro as Chief Estimator and is now employed by RetroAIM as Project Manager/Estimator for its newly established Baltimore/Washington D.C. branch. Boggs resides at 2266 Leetown Road, Summit Point, West Viginia 25446.

10.     Liptrap was formerly employed by Retro as Senior Estimator and is now employed by RetroAIM as Project Manager/Estimator for its newly established Baltimore/Washington D.C. branch. Liptrap resides at 1215 Vermont Road Bel Air, MD 21014.

11.     Muir, Boggs, and Liptrap are referred together herein as the "Former Employees."

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because Plaintiff's claims against for violations of the Defend Trade Secrets Act, 18 U.S.C.

§ 1836 *et seq*. and for conspiracy to violate the DTSA; and Plaintiff's claims against RetroAIM, LLC for trademark infringement under 15 U.S.C. § 1125(a) and § 1114 raise federal questions. Plaintiff's remaining claims arising under state law fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

13.     This Court has Personal Jurisdiction over RetroAIM because RetroAIM has engaged in and maintained systematic and continuous business within Maryland and purposefully availed itself of the benefits and protections of its laws.  The Court also has Personal Jurisdiction over RetroAIM under Md. Courts Art. § 6-103(b)(1) and (3) because RetroAIM transacts business and/or performs services in the State of Maryland, and caused tortious injury to Plaintiff while in the State of Maryland by acts or omissions occurring in Maryland.

14.     This Court has Personal Jurisdiction over Defendants Muir and Liptrap because they reside in this District.

15.     This Court has Personal Jurisdiction over Defendant Boggs because he caused tortious injury in the State of Maryland by his acts or omissions under § 6-103(b)(3).

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to the claims alleged herein arose in this District.

## FACTS COMMON TO ALL COUNTS

### A.  Retro's History as a Leader in the Demolition and Abatement Industry.

17.     Retro was founded in 1991 as a company engaged in the remediation of hazardous materials primarily in commercial and government buildings. Over the last 34 years, Retro has become a leader in the demolition and abatement industry, assisting Federal, State and Local

government, K-12 and higher education clients, and commercial clients in construction, demolition, and restoration projects.

18.    Between the mid-1990s and the present, Retro expanded its operations to hazardous materials abatement and demolition services and expanded its market from Maryland into Pennsylvania, Virginia, Washington DC, West Virginia, and, most recently, the Carolinas.

19.    Retro self-performs most of the remediation and demolition work, subcontracting and hiring temporary labor only when its work force is unable to complete certain aspects of the work or if the volume of work exceeds the capacity of the work force. Retro employs more than 190 individuals, more than 170 of whom directly perform the company's services in the field.

20.    Retro's customers include: (i) prime contractors that engage Retro to perform either hazardous materials abatement or demolition services on their projects; (ii) commercial and residential property owners for remediation or demolition services; and (iii) governmental entities largely for environmental remediation services.

21.    Over its history, and particularly in the last 25 years, at considerable effort and expense, Retro has cultivated valuable relationships with its customers. Both the identity of the organizations that comprise the customers served by Retro and the individuals within those organizations that are responsible for contracting for the services that Retro provides are known only by a few individuals employed by Retro and are compiled in documents maintained by Retro to which Retro limits access.

22.    During the same period, Retro had accumulated data based upon its experience performing the services that it provides for its customers. This relates to, among other things, the company's costs for labor, equipment, materials, and to dispose of hazardous materials. Retro uses this cost data to prepare complicated bids for work to perform hazardous materials abatement or

demolition services. Likewise, over the same period and at considerable effort and cost, Retro has compiled data, including the costs of its performance and profit margins achieved on jobs performed across its footprint. Retro uses this data to prepare bids. Retro's method for developing its bid proposals and pricing strategies is crucial to developing business, and if accessed by competitors, would allow them to undercut Retro and gain an easy and unfair economic advantage.

23.     To further the efficiency and profitability of the services it offers, Retro has developed proprietary work plans and job hazard analyses that are prerequisite for Retro's performance under contracts with some of its customers, including primarily government agencies. Such proprietary work plans and job hazard analyses afford Retro an advantage in meeting the requirements under the contracts where these are required, promptly, more efficiently, and at a lower cost, and these are not commercially available outside the company.

24.     Over the last 34 years, Retro has expended millions of dollars in research, development, and implementation of unique bidding models, customer acquisition strategies, customer lists, and job hazard analyses, all to service its clients.

**B. Retro AIM's History of Unlawfully Competing with Retro.**

25.     Retro has used the mark "RETRO ENVIRONMENTAL" in connection with providing abatement services, demolition services, hazardous chemical waste removal services, remediation services, saw cutting services, and floor grinding services since at least August 1992.

26.     Retro owns common law trademark rights in the mark "RETRO ENVIRONMENTAL." Retro also owns U.S. Registration No. 7,412,524 for the mark "RETRO ENVIRONMENTAL," and U.S. Registration No. 7,413,726 for the mark "RETRO ENVIRONMENTAL" & Design , which are registered in connection with providing "[a]sbestos abatement being asbestos removal for commercial,

governmental, and residential buildings and premises; [l]ead abatement, namely, clean-up of hazardous lead-based materials for commercial, governmental, and residential buildings and premises; [h]ouse, building, public building structure, and industrial building structure demolition services; [and] [h]azardous chemical waste removal services being hazardous chemical waste clean-up services" in International Class 37, and "[m]old remediation services; [h]azardous materials remediation services being hazardous waste treatment services; [s]aw cutting services, namely, saw cutting of concrete; [f]loor grinding services; [and] [c]ommercial, governmental, and residential environmental remediation services, namely, treatment of soil, air, and water for commercial, governmental, and residential buildings and premises" in International Class 40.

27.    True and correct copies of the Registration Certificates for the above-listed trademarks are attached hereto as **Exhibit A *in globo***. Retro's federally-registered marks and common law marks are hereinafter collectively referred to as the "RETRO Marks."

28.    Retro has continuously used the RETRO Marks in a prominent and distinctive manner in interstate commerce to distinguish the source of its services from those of others and has spent significant resources in advertising and otherwise promoting its services under the RETRO Marks.

29.    Based on Retro's longstanding and prominent use of the RETRO Marks, the growth and success achieved under the RETRO Marks, and the substantial time, money and effort that Retro has expended in promoting its services under the RETRO Marks, the RETRO Marks have become, through favorable public acceptance and recognition, exclusive assets of significant value to Retro as symbols of its goodwill and the quality of its services.

30.    In 2023, Retro received a communication indicating that it had been selected the successful bidder on a project in the Commonwealth of Virginia for which Retro had not submitted

a bid. Following this communication, Retro learned that the communication it had received had been intended for RetroAIM, LLC. RetroAIM, LLC formerly had been known as "Retro Insulation" but had broadened its services beyond insulation to include both hazardous materials abatement and demolition, while continuing to associate those new services with the name "Retro."

31.    Retro investigated and determined that RetroAIM, LLC was, in fact, using the name "Retro" to provide the same hazardous materials abatement and demolition services that Retro had been providing its customers in Virginia. In a letter dated November 25, 2024, Retro communicated with Shawn Kuhle, a Member of RetroAim, LLC, requesting that it discontinue the use of the name "Retro" in conjunction only with those abatement and demolition services, which Retro indicated constituted an infringement on its trademark of the name "Retro" in connection with such services. RetroAIM, LLC did not respond.

## C. Retro's Policies.

32.    Retro maintains an Employee Handbook with policies that govern the conduct of, and expectations for, all Retro employees, which is distributed to each employee at the start of their employment with Retro and periodically as it is updated.

33.    Retro maintains a "Confidentiality" policy in its Employee Handbook, which prohibits the use or disclosure of confidential information and trade secrets, defined as sensitive information, including, but not limited to: sales figures or projections; trade secrets; estimates; customer lists; customer purchasing habits; customer delivery preferences; computer processes; program and codes; marketing methods; programs, or related data; tax records; and accounting procedures. The Confidentiality policy requires employees who leave the company to continue to treat sensitive information confidential and refrain from using, divulging, or communicating all confidential information without express written approval of the President of Retro.

34.     Retro's confidential and proprietary company information and trade secrets are referred to herein as "Retro's Confidential and Proprietary Information."

35.     Retro also maintains an "Electronic Communications" policy, which prohibits the unauthorized use of Retro's internet systems and computers for non-Retro business use and further permits Retro's access of all company-issued mobile devices to ensure, among other things, the protection of its Confidential and Proprietary Information.

36.     Retro also maintains a policy in its Employee Handbook that governs the termination procedures for all Retro employees (the "Procedures Upon Termination" policy).  The Procedures Upon Termination require the return of all Retro property by all employees whose employment with Retro has been terminated.

### D.  Retro Safeguards and Protects its Confidential and Proprietary Information

37.     In its operations, Retro compiles, originates, and maintains its Confidential and Proprietary Information that has independent economic value. Retro has taken, and continues to take, appropriate steps to protect the confidentiality of its Confidential and Proprietary Information, including in the following ways:

    a.  The policies governing Confidentiality, Electronic Communications, and Procedures Upon Termination are maintained in the Retro Employee Handbook, which is distributed to all Retro employees at the start of employment.

    b.  Retro requires all employees to sign acknowledgments of receipt of the Employee Handbook, which includes receipt of the policies stated therein, including the Confidentiality, Electronic Communications, and Procedures Upon Termination policies.

    c.  Access to Retro's Confidential and Proprietary Information is contained within folders on Retro's private computer network that are restricted internally based on specific "User Groups" within Retro's personnel who have a need to know or a need to access such information, such as estimators and project managers. This information is not generally known to other employees of Retro who do not need to access the information to successfully perform their job duties. Retro also requires dual authentication to login into its computer network and provides password-protected computers to each employee.

    d.  Retro's Confidential and Proprietary Information is not known or disclosed outside of Retro;

    e.  All of Retro's office locations are secured facilities, not generally opened to the public;

    f.  Employees are expected to return all company property, which includes Confidential and Proprietary Information, upon termination of employment.

**E.  The Former Employees' Scope of Employment with Retro.**

38.  Retro hired Muir as a Safety Director on February 5, 2018.  Retro promoted Muir to Project Manager on May 1, 2019, and Muir acknowledged receipt of Retro's Employee Handbook containing the Confidentiality, Electronic Communications, and Procedures Upon Termination policies on March 9, 2021.

39.  Retro promoted Muir to Senior Project Manager in 2023. As the Senior Project Manager, Muir's primary job duties included managing existing demolition and abatement projects as well as cultivating and maintaining repeat business for Retro.

40.  Retro hired Boggs as an Estimator/Project Manager on June 13, 2016. Retro promoted Boggs to Estimator on July 27, 2018 and Chief Estimator on May 19, 2022. Boggs received and acknowledged receipt of Retro's Employee Handbook containing the Confidentiality, Electronic Communications, and Procedures Upon Termination policies during his employment.

41.  Retro hired Liptrap as an Estimator on April 27, 2015. Liptrap acknowledged receipt of Retro's Employee Handbook containing the Confidentiality, Electronic Communications, and Procedures Upon Termination policies on March 9, 2021.

42.  During the course of their employment, and because their job duties required it, the Former Employees were part of a limited group of employees with access to Confidential and Proprietary Information related to financing, bidding information, cost estimators, abatement analyses, vendor rates, and customer lists that were not accessible to the public or even to other non-managerial employees of Retro that were outside the designation of "project manager" or

"estimator." The Former Employees used Retro's Confidential and Proprietary Information during their employment with Retro to generate, cultivate, maintain and perform Retro's business.

**F.  *Muir and Boggs Leave Retro and Begin Working for RetroAIM.***

43.    Muir resigned from his employment with Retro on January 28, 2025.

44.    Following Muir's notice of resignation, Retro learned that RetroAIM was in the process of establishing a Baltimore/Washington DC branch and that Muir was hired as the branch's Operations Manager. Muir's last day of employment with Retro was February 21, 2025.

45.    Five days later, on February 26, 2025, Retro's management received a phone call from a company with which Retro does business, informing Retro that Boggs appeared on RetroAIM's website as the *current* "Project Manager/Estimator" of its newly established Baltimore/Washington DC branch. This was shocking to Retro, as Boggs was an employee of Retro, had not resigned, and was working with Retro clients and bidding new projects. Retro terminated Boggs the next day. Under Retro policy, Retro secured Boggs company cellphone at that time.

46.    Given the timing between Muir's resignation and the suspicious circumstances leading to Boggs' termination, Retro conducted an audit of Boggs' company-issued cellphone. The results of Retro's internal audit revealed a conspiracy among Muir, Boggs, Liptrap, and RetroAIM to steal Retro's Confidential and Proprietary Information and use that information to the benefit of RetroAIM in cultivating clients for its new branch.

**G.  *The Former Employees Plot to Steal Retro's Confidential and Proprietary Information.***

47.    A review of Boggs' company-issued cellphone revealed that, for weeks following Muir's resignation, the Former Employees exchanged text messages with each other, and Michael

Fadrowski, RetroAIM's Regional Director for the Baltimore/Washington DC branch, discussing their future employment with RetroAIM and ways to promote RetroAIM in this new territory.

48.    Specifically, after Muir had resigned from Retro, Retro learned that Boggs met with Mr. Fadrowksi on February 12, 2025 to discuss his employment with RetroAIM. Boggs received an official written offer of employment from RetroAIM two days later on February 14, 2025.

49.    Three days later, on February 17, 2025, Liptrap met Fadrowski to discuss employment at RetroAIM. Liptrap provided Fadrowski with his wife's personal email address and advised him to communicate with Liptrap using that address going forward.

50.    The next day, while still employed with Retro, Boggs and Liptrap formally accepted employment with RetroAIM and began finalizing plans to leave Retro's employment, all while communicating with RetroAIM about their plans to grow RetroAIM's business.

51.    On February 24, 2024, Boggs and Liptrap met with Muir, Mr. Fadrowski and upon information and belief, RetroAIM's President, Brad Salter, RetroAIM's Chief Executive Officer, Michael Miller, and AIM Services President, Clark Scharman, to tour office spaces for RetroAIM's new Baltimore/Washington D.C. office and to discuss their upcoming employment with RetroAIM, including ways to grow their client base.

52.    During this time, while Boggs waited to give notice of his resignation, Boggs promised to assist Mr. Fadrowski and RetroAIM with bidding new customers in the Baltimore/Washington D.C. region, which included Retro's existing customer base and, upon information and belief, included the use of Retro's client list that he misappropriated days earlier.

53.    Upon reviewing Boggs' company issued cellphone and learning of Liptrap's involvement in the Former Employees' plans to leave Retro's employment for a competing company, Retro immediately terminated Liptrap's employment.

***H. Retro's Forensic Analysis of the Former Employees' Electronic Devices Uncovers The Gravity of the Former Employees' Theft.***

54.     After reviewing the text messages on Boggs' company-issued cellphone and learning of the Former Employees' weeks-long plan to leave Retro's employment, Retro feared that its Confidential and Proprietary Information had likely been compromised.

55.     To obtain a comprehensive understanding of the extent of the Former Employees' unauthorized access and disclosure of Retro's Confidential and Proprietary Information, Retro referred this matter to a third-party forensic auditor, who conducted a forensic analysis of the Former Employees' company-issued laptops and cellphones.  The results of this analysis revealed the gravity of the Former Employees' theft and misappropriation of Retro's trade secrets. (See Declaration of Michael Perelman attached as Exhibit B with reference to Paragraphs 56-97.)

56.     Specifically, the forensic analysis uncovered the Former Employees' systematic, methodical scheme to steal Retro's Confidential and Proprietary Information, both before and after accepting employment with RetroAIM and in furtherance of promoting RetroAIM's client base.

A.   Muir's Theft of Confidential and Proprietary Information.

57.     The forensic audit of Muir's company-issued laptop revealed the following data exfiltration and unauthorized access:

58.     From January 28, 2025 to February 21 2025, Muir sent a series of emails from his Retro email address (cmuir@retroenvironmental.com) to his personal email address, attaching dozens of documents containing confidential and proprietary information, including pricing models, cost calculators, and job-specific abatement analyses for hundreds of projects.

59.     On January 28, 2025 at 9:43 AM, a USB storage device was connected to Muir's Retro-issued laptop for approximately 40 minutes. During the time the USB was connected, Muir accessed the following folder using his laptop:

a. **"Shared Documents - Documents\RETRO Project Files\2021 Job Files\21-1028 Raven Rock Mountain (PA)\6-Correspondences – Subcontracts"**

60.    The Raven Rock Mountain Complex (RRMC), which also is known as Site R, is a U.S. military installation with an underground nuclear bunker near Blue Ridge Summit, Pennsylvania. The bunker has emergency operations centers for the United States Army, Navy, Air Force, and Marine Corps.

61.    A few minutes after connecting the USB device, starting at 9:47 AM and ending at 10:26 AM Eastern, *before resigning from Retro*, Muir sent to his personal email address documents containing Retro's Confidential and Proprietary Information, including, but not limited to:

a.    2025 Estimate template 1-25-25.xlsx
b.    YTD Job Cost Summary 1.xlsx
c.    12-Dec 2024 WIP .xlsx
d.    Project Log 1.14.xlsx
e.    Cost Projection 6.27.xlsx
f.    Asbestos Work Plan 4.30.24.docx
g.    Asbestos Abatement plan of action - Digester Building.docx
h.    Asbestos Abatement plan of action - Other buildings .docx
i.    E5106 - Microbial Plan of Action R1.doc

62.    These documents each contain Confidential and Proprietary Information related to bidding models, cost estimates and calculators, client lists, and client-specific abatement analyses. For instance: (a) the 12-Dec 2024 WIP is an extensive "Work in Progress" report that contained extensive information on almost 1000 Retro projects supported by all its offices in 2024, including contract price, gross profit, cost incurred to date, estimated costs to complete, billings to date, and percentage complete, providing critical project level profitability that is competitively sensitive information that would be of value to a competitor of Retro; and (b) the 2025 Estimate Template 1-25-2025 is a estimating template that enables estimators to arrive at estimates using project-tested historical project rates and costs, enabling a competitor to see project estimating assumptions.

14

63.    Later that same day, at 1:38 PM, Muir emailed his resignation letter to Retro and advised that his last day will be February 21, 2025.

64.    After he sent his resignation, but before his employment with Retro ended, Muir continued to send data to his personal email address.

65.    On February 5, 2025 at 12:17 PM, Muir forwarded to his personal email address an email from David Ptak (david@ihservices.us), with an attachment named "Quote Request - Lead & Asbestos Abatement Services.pdf".  In his email, Ptak writes:

*See the attached and email below - seems like a good project for Retro.  We would certainly be interested in the monitoring that would go along with it.*

*66.*    The next day on February 6, 2025 at 7:59 AM, Muir forwarded to his personal email address an email from Retro Environmental's Chuck Ertel (certel@retroenvironmental.com) containing four attachments listed below.

    a.    2025 Renatl Quotes 4.pdf
    b.    2025 Rental Quotes 3.pdf
    c.    2025 Rental Quotes.pdf
    d.    2025 Rental Rates.pdf

67.    The Rental Rates and Rental Quotes show the preferred rental pricing with all of Retro's larges rental vendors and possessing those rates would give a competitive advantage to anyone else in the industry negotiating with those vendors to provide the same or similar services.

68.    In the email, Ertel writes:

*Hi All, please see the attached 2025 Rental Rates from Sunbelt, United Rentals, JGR Equipment, & Allredi.*

69.    On February 19, while using his company-issued Retro laptop Muir logged into the Microsoft M365 Mailbox to his newly issued Retro AIM email account (cmuir@aimservicesinc.com), which was issued prior to his official departure from Retro.  While logged into the aimservicesinc.com Mailbox, Muir accessed a folder titled "**Shared Documents -**

**Documents\RETRO Project Files\2023 Job Files**" from his company-issued Retro laptop. That folder contained more than 17,000 files, including the following:

      a.     cost breakdown spreadsheets named "PCO #26 - Breakdown R2.xlsx" and "10-23-1133 - JHU Agora - Consigli - Cost Breakdown.xlsx";

      b.    a "schedule of values" spreadsheet named "CHOB 4 SOV March 2024.xls"; and

      c.    a "plan of action" document named "Asbestos Abatement plan of action - Digester Building 8.18.docx".

    70.    Upon information and belief, Muir misappropriated documents within this file while connected to his Retro AIM email address.

    71.    Lastly, on February 21, 2025 at 6:31 AM Eastern, the last day of his employment, Muir sent to his personal email address a file named **Cost Detail.xlsx.**   A forensic review of this file showed that it contains over 35,000 rows, organized in 8 columns, with a heading "Job Profitability Report" and a subheading of "For the Period From Jan 1, 2024 to Dec 31, 2025."

    72.    This document is incredibly sensitive in that it shows all transactions associated with job related revenue and expenses for over a thousand jobs at an extremely granular level. With this information, a competitor could recreate the historical pricing and building model for the project estimate and compare that to the overhead structure and profitability.  This would allow a competitor a distinct advantage in competing with Retro by facilitating project costing and estimation that could rely on Retro's own data.

    73.    In most instances, the emails that Muir sent to his personal email address were found in the location "Recoverable Items\Purges", which indicates that, after emails were sent, Muir (a) deleted them and then (b) cleared his "Deleted Items" folder.

    B.   Boggs' Theft of Confidential and Proprietary Information.

    74.    The forensic audit of Bogg's Retro-issued laptop and Retro-issued cellphone also revealed data exfiltration and unauthorized access.

75.      On February 10, 2025, at approximately 3:56 PM Eastern, Boggs used his Retro company-issued laptop to access the Retro's CRM[1] system, FollowUp CRM.   Retro uses FollowUp CRM to store information about its projects and contacts.

76.      Within two minutes after accessing the FollowUp CRM, Boggs downloaded from FollowUp CRM an Excel spreadsheet named "projects-328-4083-02102025.xlsx."

77.      A forensic analysis of the internal metadata of this spreadsheet showed that it:

    a.  was created on February 10, 2025 at 3:56PM,
    b.  was last saved on February 10, 2025 at 3:56PM,
    c.  has the title "Untitled Spreadsheet",
    d.  has an Author "Unknown Creator", and
    e.  was Last Saved By "Unknown Creator".

78.      A forensic review of the contents of file "projects-328-4083-02102025.xlsx" showed that it contains 176 line items containing information organized in 55 columns including columns titled "Project Name," "Base Bid," "Gross Margin," "Labor Hours," "Company," various columns containing contact information, and more.

79.       Approximately three minutes later, Boggs created a folder named "**Client List**" in his Company OneDrive and saved an Excel spreadsheet named "**Client LIst 2025.xlsx**" [sic].  A forensic analysis of the file "**Client LIst 2025.xlsx**" showed that it

    a.      was created on February 10, 2025 at 3:56PM,
    b.      was last saved on February 10, 2025 at 4:00PM,
    c.      has the title "Untitled Spreadsheet",
    d.      has an Author "Unknown Creator", and
    e.      was Last Saved By "Shaun Boggs".

80.      A forensic review of the content of file "**Client LIst 2025.xlsx**" showed that it contains 176 line items containing information organized in 55 columns, including columns titled

---

[1] Retro Environmental uses a Customer Relationship Management ("CRM") system to maintain information about its customers, contacts, and other helpful service information about its customer base.  Only those employees with a need to know that information as part of their jobs are given access to the information.

"Project Name", "Base Bid", "Gross Margin", "Labor Hours", "Company", various columns containing contact information, and more.

81.    A forensic analysis of the two files revealed that the spreadsheet **Client LIst 2025.xlsx** derives from the spreadsheet "projects-328-4083-02102025.xlsx", which Boggs downloaded from the FollowUp CRM.

82.    The spreadsheet titled "**Client List 2025.xlsx**." contain Confidential and Proprietary Information related to bidding models, cost estimates and calculators, and client lists.

83.    Within one minute of saving file **Client LIst 2025.xlsx** in his Retro OneDrive account, Boggs used his Retro-issued laptop to access his personal Gmail account (shaunboggs5@gmail.com) and created a new email.

84.    A forensic analysis of Boggs' Retro-issued iPhone revealed that Boggs accessed two personal email accounts from Boggs iPhone—**shaunboggs5@gmail.com** and **shaunmboggs@hotmail.com**.

85.    A forensic review of the 41 email items associated with shaunboggs5@gmail.com cached on Boggs' Retro-issued iPhone showed that on February 10, 2025, Boggs sent to himself, at shaunboggs5@gmail.com, an Excel spreadsheet titled **"Client LIst 2025.xlsx" [sic].** Boggs received a formal offer of employment with RetroAIM four days later, on February 14, 2025, and accepted employment on or before February 18, 2025.

C.    Liptrap's Theft of Confidential and Proprietary Information

86.    The forensic audit of Liptrap's Retro-issued laptop and Retro-issued cellphone revealed the following data exfiltration and unauthorized access:

87.    On February 19, 2025 at 2:49 PM Eastern, Liptrap received a text message on his Retro-issued iPhone from Michael Fradowski, Director of Operations for the newly established RetroAIM Baltimore/Washington DC branch, with the text:

> *Hey Calvin,*
> *Please don't forget to formally respond the offer email which was sent to your liptrap4@icloud.com email.*

88.    Less than an hour later, on February 19, 2025 starting at approximately 3:31 PM Eastern, Liptrap used his Retro-issued laptop to access FollowUp CRM.

89.    At approximately 4:26 PM, Liptrap downloaded an Excel spreadsheet named "projects-328-4082-02192025.xlsx" from FollowUp CRM. A forensic analysis of the internal metadata of this spreadsheet showed that it:

    a.    was created on February 19, 2025 at 4:03PM,
    b.    was last saved on February 19, 2025 at 4:03M,
    c.    has the title "Untitled Spreadsheet",
    d.    has an Author "Unknown Creator", and
    e.    was Last Saved By "Unknown Creator".

90.    A forensic review of the contents of file "projects-328-4082-02192025.xlsx" showed that it contains 257 line items, containing information organized in 16 columns, including columns titled "Project Name", "Base Bid", "Contract Amount", "Company Contact", and more.

91.    Approximately 3 minutes later, Liptrap created a folder named "**AIM**" on his Company OneDrive, in location "**Documents/Calvin/AIM**".

92.    Less than a minute later, Liptrap saved a file named "**Client List – Calvin.xlsx**" into folder **AIM.**

93.    A forensic analysis of the internal metadata of the filed named "Client List – Calvin.xlsx" spreadsheet showed that it

    a.    was created on February 19, 2025 at 4:03 PM,
    b.    was last saved on February 19, 2025 at 4:33 PM,

      c.      has the title "Untitled Spreadsheet",

      d.      has an Author "Unknown Creator",

      e.      was Last Saved By "Calvin Liptrap".

94.     A forensic review of the contents of this file and determined that it contains 257 line items, containing information organized in 16 columns, including columns titled "Project Name", "Base Bid", "Contract Amount", "Company Contact", and more.

95.     A forensic analysis of the two files revealed that spreadsheet **"Client List – Calvin.xlsx"** derives from spreadsheet "projects-328-4082-02192025.xlsx", which Liptrap downloaded from FollowUp CRM.

96.     The spreadsheet titled **"Client List – Calvin.xlsx"** contains Confidential and Proprietary Information related to bidding models, cost estimates and calculators and client lists.

97.     Metadata indicates that this file was also printed on or about February 19, 2025 at 4:33 PM.  Upon information and belief, Liptrap still possesses this printed file.

**I.** ***The Former Employees and RetroAIM will use Retro's Confidential and Proprietary Information to Steal Retro's Client and Destroy the Goodwill it has Spent Years Cultivating****.*

98.     All the documents misappropriated by the Former Employees are Confidential and Propriety Information, as identified by Retro's Confidentiality Policy.

99.     The Former Employees' unauthorized access and data exfiltration occurred both before and after they accepted employment with RetroAIM,

100.     Thus, before accepting employment with RetroAIM, the Former Employees conspired with RetroAIM to misappropriate Retro's Confidential and Proprietary Information and, once accepting employment, they acted as RetroAIM's agents in misappropriating the Information.

101.     The Former Employees' data exfiltration occurred all while conspiring with Retro AIM regarding the cultivation and growth of RetroAIM's client base.

102.    RetroAIM knew or should have known of the Former Employees' misappropriation of Retro's Confidential and Proprietary Information and/or that the documents the Former Employees misappropriated were obtained through unlawful means, and it failed to take any action to stop and prevent further unlawful behavior by the Former Employees.

103.    Upon information and belief, the Former Employees intend to use Retro's Confidential and Proprietary Information in their new employment with RetroAIM and to the detriment of Retro. Indeed, the Confidential and Proprietary Information provides no other benefit to the Former Employees other than to be used in their new employment with RetroAIM to steal Retro's business for the benefit of RetroAIM.

104.    There is no justification for RetroAIM allowing its employees to use Retro's stolen Confidential and Proprietary Information.

105.    By hiring and continuing to employ the Former Employees, RetroAIM has gained access to Retro's Confidential and Proprietary Information, including its long-standing client proposals, bidding models, cost estimators, customer lists, and detailed abatement plans that will aid its procurement of clients to the detriment of Retro and its competitive advantage in this space.

106.    The Former Employees' theft and misappropriation of Retro's Confidential and Proprietary Information was intentional, knowing, willful and malicious. The Former Employees methodically planned to steal Retro's Confidential and Proprietary Information prior to leaving Retro and to use Retro's trade secrets against it for their new employer, RetroAIM.

107.    Unless the Court enjoins Defendants from further theft, possession and use of Retro's Confidential and Proprietary Information, Retro will be irreparably harmed.

108.    Retro has spent millions of dollars in expense, person-hours, trial-and-error, and overhead creating and maintaining the aforementioned Confidential and Proprietary Information.

To allow RetroAIM and the Former Employees to continue to unlawfully possess and use the misappropriated trade secrets of Retro would reduce or limit Retro's competitive edge through unlawful activities when it would otherwise take RetroAIM and the Former Employees years and millions of dollars for the time, labor, and expense properly to compete.

## COUNT ONE
### Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. (Against All Defendants)

109.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

110.    The Retro Confidential and Proprietary Information contains confidential and trade secret documents and information, including financial, business and technical information generated by Retro.

111.    The Retro Confidential and Proprietary Information relates to services used in, or intended to be used in, interstate or foreign commerce.

112.    Retro has taken reasonable steps to protect the secrecy of the Retro Confidential and Proprietary Information, including the secrecy of the trove of documents that the Former Employees retained and/or took from Retro prior to the end of their employment and that they and RetroAIM have misappropriated.

113.    The Former Employees have misappropriated the Retro Confidential and Proprietary Information by acquiring same, knowing and/or having reason to know that the trade secrets were acquired by improper means, including by theft, misrepresentation, and/or breach of an express and/or implied duty to maintain the secrecy of, and/or limit the use or disclosure of, the trade secrets.

22

114.    As the Former Employees were agents of RetroAIM during the unlawful misappropriation, RetroAIM is liable for the tortious conduct of the Former Employees.

115.    Further, RetroAIM knew or had reason to know that the trade secrets it acquired by the Former Employees were acquired by improper means.

116.    Upon information and belief, Defendants' misappropriation of the Retro Confidential and Proprietary Information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

117.    The Confidential and Proprietary Information derives economic value to Retro from not being generally known to its competitors through proper means.

118.    As a direct and proximate result of Defendants' wrongful conduct, Retro has been irreparably injured and has suffered damages and will continue to suffer damages

WHEREFORE, Plaintiff Retro seeks entry of judgment against Defendants pursuant to the Prayer for Relief set forth below.

<u>**COUNT TWO**</u>
**Conspiracy – Misappropriation of Trade Secrets in Violation of 18 U.S. Code 1836 et seq.**
**(all Defendants)**

119.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

120.    Upon information and belief, the Former Employees and RetroAIM, collectively constituting two or more parties, conspired to misappropriate the Retro Confidential and Proprietary Information prior to the Former Employees' accepting employment with RetroAIM.

121.    Each of the Former Employees, in their individual capacity used improper means to discover the Confidential and Proprietary Information, and upon information and belief, conspired with each other and RetroAIM to steal Retro's Confidential and Proprietary Information

by exceeding their authorized access of Retro's computer systems and network to steal and misappropriate the Confidential and Proprietary Information.

122.    Each Former Employee intentionally participated in the misappropriation of Retro's Confidential and Proprietary Information for the purpose of using the information in their new employment with RetroAIM.

123.    The Former Employees misappropriation of Retro's Confidential and Proprietary Information is willful, malicious, and/or in wanton disregard of Retro's rights.

124.    Retro has suffered and will continue to suffer damages and be irreparably harmed in an amount to be determined at trial.

WHEREFORE, Plaintiff Retro seeks entry of judgment against the Former Employees pursuant to the Prayer for Relief set forth below.

## COUNT THREE
### Trade Secret Misappropriation Under the Maryland Uniform Trade Secrets Act, Commercial Law Article § 11-1201, *et seq*. (Against All Defendants)

125.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

126.    The Retro Confidential and Proprietary Information contained confidential and trade secret documents and information including financial, business and technical information generated by Retro.

127.    The Retro Confidential and Proprietary Information relates to services used in, or intended to be used in, interstate or foreign commerce.

128.    Retro has taken reasonable steps to protect the secrecy of its Confidential and Proprietary Information, including the secrecy of the Retro Confidential and Proprietary Information that the Former Employees stole, and RetroAIM misappropriated.

24

129.     The Former Employes have misappropriated the Retro Confidential and Proprietary Information by acquiring same, knowing and/or having reason to know that the it was acquired by improper means, including by theft, misrepresentation, and/or breach of an express and/or implied duty to maintain the secrecy of, and/or limit the use or disclosure of, the trade secrets.

130.     The Former Employees and RetroAIM's misappropriation of the Confidential and Proprietary Information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

131.     The Confidential and Proprietary Information misappropriated by the Former Employees and RetroAIM derives economic value to Retro from not being generally known to its competitors through proper means.

132.     As a direct and proximate result of the wrongful conduct of the Defendants, Retro has been irreparably injured and has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff Retro seeks entry of judgment against all Defendants pursuant to the Prayer for Relief set forth below.

**COUNT FOUR**
**Conspiracy – Misappropriation of Trade Secrets in Violation of Maryland Code § 11-1201**
***et seq.* (Against all Defendants)**

133.     Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

134.     On information and belief, the Former Employees, collectively constituting two or more parties, conspired to misappropriate the Confidential and Proprietary Information of Retro prior to accepting employment with RetroAIM.

135.     Each of the Former Employees in their individual capacity engaged in the overt act of accessing Retro's trade secrets through improper means, and upon information and belief, conspired with each other and RetroAIM to steal Retro's Confidential and Proprietary Information

by exceeding their authorized access of Retro's systems to steal and misappropriate the Confidential and Proprietary Information. for the purposes of using that information for the benefit of their future new employer, RetroAIM.

136.    Each Former Employee intentionally participated in the misappropriation of Retro's Confidential and Proprietary information to use the information for RetroAIM's benefit.

137.    The Former Employees misappropriation of Retro's Confidential and Proprietary Information is willful, malicious, and/or in wanton disregard of Retro's rights.

138.    Retro has suffered and will continue to suffer damages and be irreparably harmed in an amount to be determined at trial.

WHEREFORE, Plaintiff Retro seeks entry of judgment against the Former Employees pursuant to the Prayer for Relief set forth below.

## COUNT FIVE
### Violation of Md. Code, Criminal Law, § 7-302
### (Against all Defendants)

139.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

140.    The Former Employees acted intentionally, willfully, and without Retro's authorization when they exceeded their authorized access into Retro's computer, computer network, computer software, computer system, and/or computer database for the purpose of stealing Retro's Confidential and Proprietary Information in violation of Md. Code, Criminal Law, § 7-302(c)(1)(i).

141.    Retro has suffered a direct injury from the Former Employees' unauthorized access of Retro's computer, computer network, computer system, computer software, and/or computer

database and theft of its Confidential and Proprietary information, including, but not limited to, the loss of Retro's confidential and proprietary trade secrets.

WHEREFORE, Plaintiff Retro seeks entry of judgment against the Former Employees pursuant to the Prayer for Relief set forth below.

## COUNT SIX
### Common Law Breach of Duty of Loyalty
### (Against the Former Employees)

142.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

143.    As employees of Retro, the Former Employees owed Retro a duty of loyalty and were obligated to act with the utmost good faith, and in the best interest of Retro.

144.    Retro was entitled to place its trust and confidence in the Former Employees and was entitled to expect them to act with the utmost good faith toward it in carrying out their employment duties and business of Retro.

145.    Retro relied on the loyalty and integrity of the Former Employees and their faithful performance of their responsibilities.

146.    The Former Employees took advantage of Retro's faith in them – thereby breaching their duties of loyalty – by acting in conflict with Retro's interest, by engaging in activities for their own benefit and the benefit of RetroAIM, to the detriment of Retro, by misappropriating Retro's Confidential and Proprietary Information prior to their termination of employment and, upon information and belief, by providing Retro's Confidential and Proprietary Information to Retro AIM and/or using that information in conducting RetroAIM's business.

147.    The Former Employees knowingly and willingly breached their duty of loyalty to Retro by misappropriating Retro's Confidential and Proprietary Information, and engaging in acts that undermined Retro's business operations.

148.    The Former Employees acted in a manner inconsistent with their agency and trust by misappropriating Retro's Confidential and Proprietary Information to the injury of Retro and for their own benefit and the benefit of RetroAIM, and by acting against Retro's interests during their employment with Retro.

149.    As a direct and proximate cause of the disloyalty of the Former Employees and breach of their duties, Retro has been and is being harmed, and faces risk of irreparable harm.

150.    The Former Employees are still in possession of Retro's Confidential and Proprietary Information, continue to access that information, and are able to use that information to benefit Retro AIM and to the detriment of Retro. As a direct and proximate result of the wrongful conduct of the Former Employees, Retro has been irreparably injured, has suffered damages, and will continue to suffer damages.

WHEREFORE, Plaintiff Retro seeks entry of judgment against the Former Employees pursuant to the Prayer for Relief set forth below.

## COUNT SEVEN
**Tortious Interference with Prospective Business Relations**
**(against the Former Employees)**

151.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

152.    Before the termination of employment with Retro, the Former Employees intentionally and willfully accessed Retro's systems repeatedly to steal Retro's Confidential and

Proprietary information, which, upon information and belief, they then used against Retro on behalf of Retro AIM.

153.    The Former Employees' unauthorized access into Retro's computer systems and theft of Retro's trade secrets was calculated to caused damages and loss to Retro.

154.    The Former Employees were never justified in accessing Retro's computer systems for the purpose of misappropriating Retro's Confidential and Proprietary information and did so with an unlawful purpose through false misrepresentations, deceit, and fraud.

155.    The Former Employees' intentional and willful actions of gaining unauthorized access to Retro's software and stealing its proprietary information constitutes malice.

156.    As a direct and proximate cause of the Former Employees' intentional interference with Retro's business, Retro has been irreparably injured, suffered damages, and will continue to suffer damages.

WHEREFORE, Plaintiff Retro seeks entry of judgment against the Former Employees pursuant to the Prayer for Relief set forth below.

## COUNT EIGHT
### Trademark Infringement (15 U.S.C. §1114) (Against RetroAIM, LLC)

157.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

158.    Retro advertises, markets, and provides abatement and demolition services and other related services under the RETRO Marks and uses these marks to distinguish its services from those of others.

159.    Because of the continuous use of the RETRO Marks by Retro, the RETRO Marks have come to mean, and are understood by customers and the public to signify, the services of Retro.

160.    RetroAIM has infringed Retro's federally registered RETRO Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing abatement and demolition services under the confusingly similar marks "RETRO," "RETROAIM," and/or other variations thereof that are confusingly similar or identical to Retro's RETRO Marks.

161.    RetroAIM's use of the marks "RETRO," "RETROAIM," and/or other variations thereof that are confusingly similar or identical to Retro's RETRO Marks in connection with providing abatement and demolition services is without Retro's permission or authority and is likely to cause confusion, mistake and/or deception among the purchasing public and also constitutes initial interest confusion.

162.    Upon information and belief, RetroAIM's unauthorized use of the confusingly similar "RETRO" and "RETROAIM" marks has been made notwithstanding Retro's well-known and prior established rights in and to the RETRO Marks.

163.    RetroAIM's conduct constitutes infringement of Retro's federally registered RETRO Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

164.    Upon information and belief, RetroAIM acted intentionally and/or willfully in infringing upon the RETRO Marks, with knowledge of Retro's rights in and to the RETRO Marks, and with knowledge that RetroAIM's usage of the marks "RETRO," "RETROAIM," and/or variants thereof that are confusingly similar to Retro's RETRO Marks was unauthorized and was, in fact, infringing.

165.    As a result of RetroAIM's wrongful conduct, Retro is entitled to recover its actual damages, RetroAIM's profits attributable to the infringement, and treble damages and attorneys'

fees pursuant to 15 U.S.C. § 1117 (a) and (b).  Alternatively, Retro is entitled to statutory damages pursuant to 15 U.S.C. § 1117 (c).

166.     RetroAIM's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Retro's business, reputation, and goodwill in the federally registered RETRO Marks, for which Retro has no adequate remedy at law.

WHEREFORE, Plaintiff Retro seeks entry of judgment against RetroAIM, LLC pursuant to the Prayer for Relief set forth below.

<u>**COUNT NINE**</u>
**Trademark Infringement (15 U.S.C. §1125(a)) (Against RetroAIM, LLC)**

167.     Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

168.     RetroAIM has infringed Retro's common law RETRO Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing abatement and demolition services under the confusingly similar marks "RETRO," "RETROAIM," and/or other variations thereof that are confusingly similar or identical to Retro's RETRO Marks.

169.     RetroAIM's use of the marks "RETRO," "RETROAIM," and/or other variations thereof that are confusingly similar or identical to Retro's RETRO Marks in connection with providing abatement and demolition services is without Retro's permission or authority and is likely to cause confusion, mistake and/or deception among the purchasing public and also constitutes initial interest confusion.

170.    Upon information and belief, RetroAIM's unauthorized use of the confusingly similar "RETRO" and "RETROAIM" marks has been made notwithstanding Retro's well-known and prior established common law rights in and to the RETRO Marks.

171.    RetroAIM's conduct constitutes infringement of Retro's common law RETRO Marks in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

172.    Upon information and belief, RetroAIM acted intentionally and/or willfully in infringing upon the RETRO Marks, with knowledge of Retro's rights in and to the RETRO Marks, and with knowledge that RetroAIM's usage of the marks "RETRO," "RETROAIM," and/or variants thereof that are confusingly similar to Retro's RETRO Marks, was unauthorized and was, in fact, infringing.

173.    RetroAIM's infringing activities have caused, and, unless enjoined by this Court, will continue to cause, irreparable harm and other damage to Retro's business, reputation and goodwill in its common law RETRO Marks.

WHEREFORE, Plaintiff Retro seeks entry of judgment against RetroAIM, LLC pursuant to the Prayer for Relief set forth below.

## COUNT TEN
### Trademark Infringement (Maryland Common Law)
### (Against RetroAIM, LLC)

174.    Retro repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

175.    RetroAIM has infringed Retro's common law RETRO Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing abatement and demolition services under the confusingly similar marks

"RETRO," "RETROAIM," and/or other variations thereof that are confusingly similar or identical to Retro's common law RETRO Marks.

176.    RetroAIM's use of the marks "RETRO," "RETROAIM," and/or other variations thereof that are confusingly similar or identical to Retro's RETRO Marks in connection with providing abatement and demolition services is without Retro's permission or authority and is likely to cause confusion, mistake and/or deception among the purchasing public.

177.    Upon information and belief, RetroAIM's unauthorized use of the confusingly similar "RETRO" and "RETROAIM" marks has been made notwithstanding Retro's well-known and prior established common law rights in and to the RETRO Marks.

178.    RetroAIM's conduct constitutes infringement of the RETRO Marks under the common law of the State of Maryland.

179.    Upon information and belief, RetroAIM acted intentionally and/or willfully in infringing upon the RETRO Marks, with knowledge of Retro's rights in and to the RETRO Marks, and with knowledge that RetroAIM's usage of the marks "RETRO," "RETROAIM," and/or variants thereof that are confusingly similar to Retro's RETRO Marks, was unauthorized and was, in fact, infringing.

180.    RetroAIM's infringing activities have caused, and, unless enjoined by this Court, will continue to cause, irreparable harm and other damage to Retro's business, reputation and goodwill in its common law RETRO Marks.

WHEREFORE, Plaintiff Retro seeks entry of judgment against RetroAIM, LLC pursuant to the Prayer for Relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Retro demands judgment against the Former Employees and RetroAIM on all Counts of the Complaint that includes the entry of an Order:

A.  Preliminarily and permanently enjoining and restraining the Former Employees and RetroAIM, and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, from any implementation, modification, or customization of its business practices or operations, including without limitation its use of Retro's Confidential and Proprietary Information, or any other trade secrets or internal, proprietary, or confidential documents, data, or information of Retro;

B.  Preliminarily and permanently enjoining and restraining the Former Employees and RetroAIM and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, from the disclosure or use of Retro's Confidential and Proprietary Information or any other trade secrets or internal, proprietary, or confidential documents, data, or information of Retro;

C.  Preliminarily and permanently enjoining and restraining the Former Employees and RetroAIM, and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, from reproducing or otherwise using Retro's Confidential and Proprietary Information, and any and all internal, confidential, proprietary, and/or trade secret documents, data, and/or information belonging to Retro;

D.  Preliminarily and permanently enjoining and restraining the Former Employees and RetroAIM, and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, from viewing Retro's Confidential and Proprietary Information or any other trade secrets or internal, proprietary, or confidential documents, data, or information of Retro, in their possession which has not yet been viewed by the Former Employees and RetroAIM, or any persons acting on their behalf;

E.  Requiring the Former Employees, RetroAIM, and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, to immediately return all records related to Retro in their possession including Retro's Confidential and Proprietary Information, all trade secrets or internal, confidential, or proprietary information, belonging to Retro, and any copies thereof, to Retro, including but not limited to, documents, e-mails, customer lists, spreadsheets, computer files, financial information, and all other information concerning Retro;

F.  Requiring the Former Employees and RetroAIM, and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, to immediately disclose to Retro each person, including individuals and business entities, with whom they have shared Retro's Confidential and Proprietary Information, trade secrets, or data (electronic or otherwise), including any and all documents, data, or information in their possession, custody, or control;

G. Directing the Former Employees and RetroAIM and those persons in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, to preserve the Former Employees' personal and business computers and electronic storage devices and RetroAIM's business computers to determine the extent of information and company property that was copied from Retro's computer network(s) and, to that end, order the Former Employees and RetroAIM to (i) refrain from taking any action to destroy, discard, tamper with, or delete any electronic or written communications, documents, materials, and any and all information in the Former Employees and/or RetroAIM's possession, custody, or control relating to Retro's Confidential and Proprietary Information, all trade secrets or internal, confidential, or proprietary data or information belonging to Retro, and any copies thereof; (ii) take all steps necessary to ensure preservation of all communications in connection with Retro's Confidential and Proprietary Information, all trade secrets or internal, confidential, or data or information belonging to Retro, and any copies thereof, including all electronically formatted or stored documents in the Former Employees and/or RetroAIM's possession, custody, or control; and (iii) adjust any document retention or destruction policy and all computer backup protocols to ensure that preservation of Retro's Confidential and Proprietary Information, all trade secrets or internal or confidential data or information belonging to Retro, and any copies thereof;

H. Directing the Former Employees, RetroAIM and those persons in active concert and participation with Defendants who receive actual notice of the Court's order

by personal service or otherwise, to allow Retro, or its agent, (i) access to the Former Employees and RetroAIM's business and personal computers and electronic storage devices to determine the extent of information and company property that was copied from Retro's computer network(s) and/or including or related to Retro's Confidential and Proprietary Information, and (ii) the right to copy any such devices at Defendants' expense;

I.  Enjoining RetroAIM, LLC and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: (1) engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein; (2) using without permission any mark or other intellectual property right of Retro; (3) acting to infringe the RETRO Marks; (4) acting in any other manner to derogate Retro's intellectual property rights; and (5) requiring RetroAIM, LLC to file with this Court and to serve upon Retro, within thirty (30) days after the service on RetroAIM, LLC of the injunction, or such extended period as this Court may direct, a report in writing under oath setting forth in detail the manner and form in which RetroAIM, LLC has complied with the injunction;

J.  Ordering RetroAIM, LLC, its members, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with RetroAIM, LLC to deliver up for destruction any and all labels, signs, prints, packages, wrappers, receptacles, advertisements, and any other printed materials bearing the marks "RETRO," "RETROAIM," and/or any variants

thereof that are likely to cause confusion with Retro's RETRO Marks, that are being used in connection with abatement and/or demolition services, and to obliterate, destroy, or remove all other uses of marks likely to cause confusion with Retro's RETRO Marks;

K. Ordering that RetroAIM, LLC's infringing use of the RETRO Marks, the "RETRO" mark, the "RETROAIM" mark, and/or any confusingly similar variants thereof, in connection with abatement services, demolition services, or any other related services, is in violation of 15 U.S.C. § 1114;

L. Ordering that RetroAIM, LLC's infringing use of the RETRO Marks, the "RETRO" mark, the "RETROAIM" mark, and/or any confusingly similar variants thereof, in connection with abatement services, demolition services, or any other related services, is in violation of 15 U.S.C. § 1125;

M. Ordering that RetroAIM, LLC's infringing use of the RETRO Marks, the "RETRO" mark, the "RETROAIM" mark, and/or any confusingly similar variants thereof, in connection with abatement services, demolition services, or any other related services, violates the common law of the State of Maryland;

N. Ordering that a likelihood of confusion exists between Retro's RETRO Marks and RetroAIM, LLC's "RETRO" and "RETROAIM" marks;

O. Ordering that RetroAIM, LLC's infringing use of the marks "RETRO," "RETROAIM," and/or any confusingly similar variation thereof, is willful;

P. Requiring a full and complete accounting of all monies received by RetroAIM, LLC as a result of the wrongful conduct alleged herein, together with an order transferring to Retro any amounts found to be due to Retro;

Q. Awarding to Retro all of RetroAIM, LLC's profits and/or Retro's damages from lost sales after an accounting, and that such award be increased as permitted, including trebling under 15 U.S.C. § 1117;

R. Appointing a Special Master paid for by the Former Employees and Retro AIM to ensure that no propriety or confidential information belonging to Retro is used by Defendants in the future;

S. Awarding compensatory damages jointly and severally among Defendants;

T. Awarding consequential and punitive damages arising out of Defendants' conduct given that their conduct was intentional, knowing, willful, malicious, fraudulent, and oppressive;

U. Awarding costs and counsel fees incurred in this action pursuant to 18 U.S.C. § 1836 (b)(3)(D) and 15 U.S.C. § 1117;

V. Ordering expedited discovery; and

W. Granting such other and further relief as this Court deems equitable and just.

## VERIFICATION

Michael Brower, Vice President of Retro Environmental, LLC verifies on personal knowledge and under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained in Paragraphs 17 through 55, 98, and 108 within the Verified Complaint are true and correct.



Michael Brower

## JURY TRIAL PRAYER

Plaintiff hereby demands a trial by jury under Federal Rule 38(b) on all issues so triable.

March 14, 2025

Respectfully submitted,

*/s/ James E. Edwards, Jr.*
James E. Edwards, Jr., Esq. Bar No. 02360
jedwards@bakerdonelson.com
Christopher C. Dahl, Esq. Bar No. 29649
cdahl@bakerdonelson.com
Thomas H. Barnard, Esq. Bar No. 27488
tbarnard@bakerdonelson.com
Gillian M. Felix, Esq. Bar No. 21717
gfelix@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Light Street, 19th Floor
Baltimore, Maryland 21202
P: 410.862.1130
F: 410.547.0699

*Counsel for Retro Environmental, LLC*